## MISSOURI, K. & T. RY. CO. OF TEXAS v. THAYER. (No. 5489.)

(Court of Civil Appeals of Texas. Austin. April 28, 1915.)

1. RAILROADS ⬡348 — ACCIDENT AT CROSSING — QUESTION FOR JURY — CONTRIBUTORY NEGLIGENCE.

Evidence, in an action against a railroad for injury from a collision of its train with plaintiff's automobile, *held* sufficient to sustain a finding that plaintiff was not guilty of contributory negligence in not again looking before he reached a point which rendered the collision inevitable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⬡348.]

2. APPEAL AND ERROR ⬡515—STATEMENT OF FACTS—FORM AND CONTENTS.

Where a statement of facts showed that two photographs of the place where a collision occurred were in evidence and that a witness testified with reference to one of them, they should have been brought up with the record, and, where a map was drawn on the floor in front of the jury and witnesses testified with reference to it, the statement of facts should make their testimony intelligible to the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2322–2325; Dec. Dig. ⬡515.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by Charles Thayer against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Charles C. Huff, of Dallas, and Spell & Sanford and W. W. Naman, all of Waco, for appellant. Hamilton & Murphree, of Waco, for appellee.

KEY, C. J. Appellee brought this suit against appellant, alleging that he was injured in a collision at a street crossing in the city of Waco, between a train belonging to appellant and backing in a westerly direction on a street, and an automobile in which appellee was riding, moving in a southerly direction on another street, at about 10 o'clock p. m. The negligence charged against appellant was: (1) Failure to ring the bell; (2) failure to blow the whistle; (3) failure to have a flagman on the rear end of the train to warn the public of its approach to the crossing; (4) failure to keep a flagman at the crossing; and (5) in operating the train at a high and dangerous rate of speed as it approached the crossing. Appellant specifically denied all of appellee's allegations of negligence, and specially pleaded that appellee was guilty of contributory negligence in failing to exercise ordinary care by looking and listening to ascertain whether or not a train was approaching the crossing, and that such

negligence was the proximate cause of the injuries complained of. The case was submitted to a jury upon special issues, and, from a verdict and judgment in favor of appellee for $500, appellant prosecutes this appeal.

The fourth special issue required the jury to find:

"Whether the plaintiff approached defendant's track at a high and rapid rate of speed, and whether plaintiff failed to look or listen for the approach of defendant's train at a time when he could have stopped and prevented said accident"—in response to which the jury answered no.

Appellant assailed that finding in its motion for a new trial, and the only error assigned in this court is predicated upon the action of the trial court in refusing to sustain that paragraph of appellant's motion for a new trial. Counsel for appellant present the proposition that the undisputed testimony given by appellee himself while on the witness stand shows that if he had looked he could have seen the approach of the train in time to have stopped his car and avoided injury, and therefore, notwithstanding the fact that he testified that he did look and did not see the approaching train, the jury had no right to give credence to the latter statement and find that he did not fail to look for the approaching train. In support of that contention, counsel for appellant have set forth in their brief the testimony as follows:

"Plaintiff testified: 'As I approached the M. K. & T. track I am sure there was no train. I was going at the rate of speed of about three or four miles an hour and was on the right-hand side of the street. * * * With reference to my making an effort to find out whether a train was coming, I slowed down. I looked and listened, looked right and left, and did not hear any at all. * * * When I was approaching Jackson street, where those trains run, I began to slacken my speed about the middle way of the block, about the middle of the block before I got there. I had not been going fast up to that point. I slackened for the Cotton Belt track, and then I had not gone fast at all. I didn't gain any speed at all. When I hit the Cotton Belt track, I was going about six or seven miles an hour. Then after I passed the Cotton Belt track, which is the first track on Mary street (the street parallel to Jackson street and the first street before Jackson street), after I passed the Cotton Belt track on Mary street and got to the middle of the block, I was going about five miles an hour. Then as I approached Jackson street I slowed up and was going about three or four miles an hour. I was about twelve or fifteen feet of the first track on Jackson street before I looked down the track and up the track to see whether the train was coming; I was closer than that, about ten feet, about ten feet from the first track is what I would judge. I looked both ways, up and down. There was no curtain in the front that would obstruct my view. I was in plain view. I couldn't see very far down Jackson street on account of that brick building. That brick building obstructed my view. When I was within ten feet of the track looking down Jackson street that way, I could hardly see half a block, I could see down the block about a third of a block; that was when I was within ten feet of the first track. I didn't see the

train then. There is an arc light on the corner. The arc light is on the corner of Jackson and Sixth streets. From the point where the train collided with my automobile I could see down Jackson street, when I was within ten feet from the track, about one-third of a block. I couldn't estimate how many feet that would be; I don't know. There are about 300 feet or more in a block, and I could see about 150 feet. I looked down the track and could see about 100 or 150 feet, and I saw no train coming. I did not stop my machine entirely. * * * I didn't stop entirely to look down the street. I slackened up to about three miles an hour. I looked down the street and up the street, both ways. There was no train in view. I could see down the track about a third of a block. I remember now positively about the distance that I looked down the track and could see one-third of a block. I remember that distinctly. My automobile was on the track when I saw the train.'

"R. F. Hyde, a witness for the appellant, testified as follows: 'I am claim adjuster for the M. K. & T. Ry. Company of Texas. In the course of my business I have had occasion to examine and notice the condition of tracks and other surrounding buildings at the corner of Sixth and Jackson streets. When I went down there the next morning, I took particular notice of the buildings on each side of the street, the number of tracks, and their relative positions in the street. * * * Made some measurements down there. I was present when this photograph was taken (witness identifying the photograph). The photographer was standing 84 feet north from the south rail when the photograph was taken. He was standing about 12 feet from the west curb on Sixth street. The man standing in the middle of Sixth street, shown in the photograph on the south rail, was 72 feet from the person shown in the photograph on the rail east on Jackson street. I observed how far down Jackson street you can see from the curb line of Jackson street on Sixth street in the middle—standing in the middle of Sixth street you could see on to Third street. You could see on to Third street down Jackson street. * * * The first rail that you would meet as you go south on Sixth street is 34 feet from the curb line of Jackson street, if extended across Sixth street. The first rail that you meet as you go south on Sixth street— I did not make any calculation of that, but it would be about 20 feet. I would estimate the distance between the curb line of Jackson street, if extended across Sixth street, and the rail which you first meet as you go south on Sixth street, to be about 20 feet.'

"Appellee testified in his own behalf as follows: 'The train was on the first track, I think.'

"B. C. Cook, a witness for plaintiff, testified: 'All three of those tracks run across the street. I am positive as to which one of those tracks the collision occurred on. There is no question about that. It was on the middle track.'

"R. R. Simmons, a witness for appellant, testified that there were but two tracks. The track on which the accident occurred was on the south track; that is to say, the track used by north-bound trains and the one which would be reached last in going south on Sixth street.

"B. C. Cook, a witness for appellee, testified that the train was going very slowly; it was not going at any high rate of speed at all. All of the appellant's witnesses testified that the train was going from four to six miles an hour."

In addition to the evidence set out above, it is proper to state that appellee testified that the train was running at a speed rate of from 15 to 18 miles an hour. He also testified that the train shoved the automobile about 12 or 15 feet beyond what would be the west line of Sixth street extended across Jackson street, and in all moved the automobile about 20 feet. He further testified that he listened for and heard no signal, and that he saw no light on the train until after the accident occurred and three of the employés of appellant came out of the door at the rear end of the train. All of appellant's employés who were operating the train, and who testified in the case, stated that the train was running at a rate of speed of only 5 or 6 miles an hour; but one of them stated that such train running at that rate of speed could be stopped in about the length of a car, or about 45 feet, while another stated that it could be stopped in about half the length of a car, and each of them stated that the emergency brake was applied before the train reached Sixth street, one placing the distance 8 or 10 feet and the other 15 or 20 feet. One of appellant's witnesses testified that he measured Sixth street, and that it was 45 feet from curb to curb. The plaintiff testified that he was traveling on the west side of Sixth street, 5 or 6 feet from the curb. So it appears that there was testimony tending to corroborate the plaintiff, and to show that the train was running much faster than the train crew said it was; otherwise it would have been stopped before it reached the plaintiff, instead of striking his automobile and moving it 20 feet.

[1] Counsel for appellant cite cases in which it has been held by appellate courts that when the undisputed physical facts show that a person approaching a crossing could have seen the approaching train, if he had looked for it, his testimony that he did look and did not see the train should be disregarded and not permitted to have any probative force, and it is contended that the rule referred to has application to this case. In other words, the contention is that, while the plaintiff stated on the witness stand that he looked for the train when he was within 10 feet of the railroad track, the other undisputed facts show that he did not do so or else he saw the approaching train; and therefore the verdict of the jury finding, in effect, that he did so look and did not see the train, should be set aside. In other words, the argument is that the time which elapsed between the time when plaintiff says he looked and the time the collision occurred was so short that the train, even if it was running at a speed rate of 30 miles an hour, must have been within less than 100 feet of the plaintiff, although he said he could see that distance and did not see it. The answer to that argument is that there was testimony tending to show that the plaintiff was mistaken when he said he was within 10 feet of the railroad track at the time he looked up and down the street to see if a train was approaching. Appellant's claim agent, Mr. Hyde, testified that he went upon the scene the next morning; that he measured the distance from the west line of Jackson street to the first railroad track

that would be reached by a person traveling south on Sixth street, and the distance was 84 feet. It is true that he followed that statement up with another to the effect that he did not measure the distance, but would judge it to be about 20 feet; but the jury had the right to believe whatever portion of his testimony they saw proper. At any rate, his testimony indicates that the plaintiff was mistaken when he estimated the distance from the railroad track at which he first looked when approaching the same. Also, the plaintiff testified that at the time he looked for the approaching train a brick building on the corner to his left interfered with his vision, so that he could only see about a third of a block, or from 100 to 150 feet down Jackson street. Considering that testimony, the jury may very properly have concluded that the plaintiff was mistaken when he said he was within 10 feet of the railroad track when he looked for the train, because if he had been at that place he would have been out in the street, and the house referred to would not have obstructed his vision; and, if the light from the arc lamp at the corner was sufficient, he necessarily could have seen much further than 150 feet down Jackson street. So it appears that the jury had the right to conclude that the plaintiff's car was probably 40 feet from the railroad track when he first looked up and down the street, and if such was the case, and the train was running 18 miles an hour, and the plaintiff traveled the intervening distance at a speed of only 3 miles an hour, then at the time he looked the approaching train was more than 150 feet away and not within the range of his vision. In other words, if the plaintiff's car was going at the rate of 3 miles an hour and the train at the rate of 18 miles an hour, the latter was traveling 6 times as fast as the former, and while the plaintiff's car was traveling 40 feet the train would travel 240 feet. Hence we hold that this case is distinguishable from those cited and relied upon by counsel for appellant, and comes nearer being within the class of cases illustrated by T. & P. Ry. Co. v. Fuller, 13 Tex. Civ. App. 151, 36 S. W. 319, and Boyd v. Railway Co., 101 Tex. 411, 108 S. W. 813. Whether or not the plaintiff was guilty of negligence in not again looking before he reached a point which rendered the collision inevitable was a question of fact for the jury, and that question was resolved in his favor by the answer given to the fifth special issue. It will be noted that the jury did not find how far appellee was from the railroad track when he first looked for a train; and it is more probable that he made a mistake as to distance, than as to the fact that the house on the corner interfered with his vision when he looked down the street.

Counsel for appellee, claiming that this appeal is manifestly for delay, have requested this court to assess 10 per cent. damages, as authorized by statute when it is apparent that an appeal has been prosecuted for delay only; but we do not believe that this case falls within that class, and therefore that request will be denied. In other words, we are impressed with the view that this appeal is in good faith and not merely for delay.

[2] However, there is one criticism which we deem it our duty to make, and that has reference to the manner in which the statement of facts has been prepared. In fact, the criticism goes to the manner in which cases are sometimes tried. For instance, the statement of facts shows that two photographs of the place where the collision occurred were introduced in evidence, and one witness testified with reference to one of those photographs, but neither of them have been brought up with the record, and therefore some of the witness' testimony is unintelligible to us, and we are deprived of the benefit which the jury had of the photographs themselves as testimony. Also, it appears that while the case was being tried a map was drawn on the floor in front of the jury, and witnesses testified with reference to it, and much of their testimony is unintelligible to us for the reason that the statement of facts merely shows that the witnesses pointed to certain places on the map; but it is impossible for us to tell where those places were. To illustrate, we copy from page 33 of the statement of facts as follows:

"(Indicating) Here is the side of the street, we were coming up this way. Now, right along here is the edge of the walk, and I gave the signal to him about the middle of the street. There is where I was when I gave the signal."

Many other similar defects appear in the statement of facts, and therefore the case is not presented in this court as it was in the court below, and perhaps we might be justified in affirming the judgment for that reason. Cases should be so tried as that when an appeal is taken a statement of facts can be brought up which will intelligently show what the witnesses said while testifying; and while for the time being it may be more convenient to have a witness point to a certain place on a sketch on the floor, and say this is where the switch stand was located, etc., unless that testimony is supplemented by a map incorporated in the statement of facts, or by some other testimony by which an appellate court can understand the testimony referred to, parties appealing will take the risk of having the appellate court disregard the entire statement of facts.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.